First case this morning, Centurion Industries v. Workers' Compensation Comm'n, 511-0373. Counsel, please. Thank you, Your Honor. Good morning, Your Honors. Counsel, my name is Paul Coghlan. I represent Centurion Industries. This is really a typical run of the mill, what I like to call a simple little case, simple set of facts. This gentleman was working out of state. He was on the second-to-last day of a temporary assignment. There was no dispute. At some point during that day, he presented for medical treatment to the Thayer Hospital Emergency Room. And he began what would become a recurring theme when he went to the hospital. He had a hard time explaining what, if anything, happened to him. Specifically, he told the hospital that he had a two-day history of gradual onset of shoulder pain. He did concede he was doing lifting at work without any specific event, which, by the way, that would correspond to an accident date on the 17th, not the 18th. He came back to Illinois. He went to the company-designated clinic in Decatur. He saw Dr. Bracco there. He told Dr. Bracco that he was waiting for a crane when he began an onset of shoulder pain. He also, I believe before the trial, or at least before the post-proofs, he went to Dr. Pauletta in St. Louis. I don't believe we have a detailed record of what, if anything, happened in Dr. Pauletta's records, other than he told Dr. Pauletta it was work-related. But we really don't have a lot of facts if you scour Dr. Pauletta's records. So the Commission finds the claim incredible, right? True. Why is their finding against a manifest way of the evidence? Because when the case was tried in February, we had three months of treatment, and that was the first day, the very first day anybody uttered a word about pulling on something with a pry bar. So his testimony is contradicted by all of the totality of the evidence, everything, including his own statement from his own physician, his own medical records. Nobody heard about this before. And after Mr. Bracco said he was pulling on the pry bar, what did I do? Did I close proofs that day? No. I went to the caterer, I asked for Dr. Bracco's deposition, and I asked him about this. Did he ever tell you he was pulling on a pry bar? No. Counsel asked him a general question, could that generally cause shoulder injury, which of course no doctor is going to deny that generally that could cause shoulder. However, categorically denied that he ever told him that. But the Commission found the claim incredible, very incredible. And I'm not sure what I read about the record about Dr. Bracco in it, but he was very well respected in his testimony or deposition. Well, you know, I don't know anything in the record where they made any finding Dr. Bracco was not credible, and Dr. Bracco is his agent. Well, his records were inconsistent. No. I think Dr. Bracco, not only was his records consistent, his testimony, we went over this again and again and again. And then that leads into the correlating issue of whether or not the petitioner, in light of Dr. Bracco's testimony, you know, because the accident causation here go hand in hand, whether or not the petitioner met his burden of proof as to causation, which not only is a manifest weight question, it's a legal question of whether or not he put forth any evidence to meet his burden of causation. Well, you hit a chain of events. Let's take your argument. Let's distill it down. You're saying, okay, all the other evidence contradicts the claim for the sake of the argument. He's not credible. But who makes the determination regarding the credibility of a witness? Do we do that or does the Commission do that? The Commission does that. Well, then that's a burden. The Commission does that, and that's a difficult burden. However, there is no chain of events here. There is no clear chain of events. The date doesn't even line up at the emergency room, much less the histories. And what did the employer do here? The employer is sitting here quietly not doing anything. It's the petitioner that keeps telling everybody a different version of what happened. And, you know, that's meeting his burden. That's being consistent. That's a traceable chain of events that we are going to take this case for a case where we're going to say we're going to forgive their requirement. If there was ever a case where they would have helped themselves by bringing a doctor forward to say, you know, there's some questions here. How do you justify this being traceable to that? How do you square the initial history he gave, et cetera, et cetera? So they do absolutely nothing. They do nothing other than say hypothetically to the treating doctor, in general, can pulling out a pry bar cause an injury, and that's the proof? That's meeting your burden of proof now? I think there's some problems with Dr. Bracco's testimony. You characterized it as being very favorable to the respondent. However, the Commission specifically found that based upon the chain of events, Dr. Bracco admitted that the use of pry bars and two-by-fours, as you alluded to, could have caused or aggravated the left shoulder. So that's indirect. In general. In general, but again, you can't just look at that in general. That's like asking a doctor in a motor vehicle accident, can being in a motor vehicle accident injure your back? Yes. But then he goes on to say, but it didn't happen in this particular case. So they're slicing and splicing a small bit of what he said to try and justify a result here that somehow, to forgive, in my opinion, not only to do an end run around the Reynolds case for purposes of penalties, to try and deprive the employer of the position that they reasonably relied upon the Reynolds decision and relied upon Dr. Bracco's testimony as it relates to penalties, but then taking that a step further and trying to elevate that statement out of context to supplant the petitioner's failure to meet his burden of proof as to causation. Well, you believe Dr. Bracco was credible, right? No question. Okay. Well, as long as we're slicing and dicing, as you have alluded to. This says, although Dr. Bracco did opine of causal connection between the claimant's injury and employment, Bracco's testimony regarding and based on claimant's reported accident history upon which he based his opinion was contradicted by the history noted in Dr. Bracco's own medical records. What is that? It's noted. Bracco testified claimant reported feeling pain in his left shoulder while he was outdoors waiting for a crane, right? However, Dr. Bracco's medical records reflect claimant, and this is in his records, he was working doing his normal duties. That's what he's got in his records and makes no mention of waiting for a crane. So you have a major inconsistency between his testimony and his records. I don't, with all due respect, Your Honor, I don't see that as an inconsistency. He was working doing his normal duties. You know, what does that mean? What does that mean? Well, I don't see how that's consistent. To me, that sounds very similar to what he told to the emergency room doctor that basically, Well, it implies that this didn't, it's fictitious. He's just standing around doing nothing, and then he says he was doing his normal duties, which would imply he's doing work-related activities, correct? I don't, Anyway, the commission thought it was inconsistent. The commission thought that that was inconsistent, and I believe that that was a stretch, a big stretch. At the very, very minimum, Dr. Bracco did not tie up the surgery and the condition of his being to the accident in question. There's no question about that. Not my section 12 doctor. He's under the law. He is a treating doctor. He's an agent of the petitioner. So, again, if we even, if we get past, let's agree with you. Let's say, okay, maybe there's enough here to get past accident because the commission found the petitioner testimony, and maybe if we adopt the proposition that that in and of itself would be sufficient to sustain the commission as it relates to accident. How do we find that the petitioner met his burden here as to causation? Where's the evidence? Where's the medical evidence? Where's the chain of events leading back to a specific time and date? If you don't really need, just for the sake of the argument, you don't really need medical testimony to establish your plan B? Not in general, no, but in this case, yes, because, number one, you're not dealing with a condition that a layperson could say this slab lesion or tear, whatever it is, that's clearly related to the mechanism of injury. This is the type of case, because of the nature of the injury itself, that lends itself to requirement, although it's not a strict requirement, lends itself to requirement of having a doctor tie it up. And, again, one of the questions here is the type of injury that would happen. Excuse me. I can finish my thought, Justice Hoffman. Excuse me. According to the commission, it says, respondents subsequently took Dr. Bracco's deposition. Dr. Bracco agreed that assuming petitioner's report of working with a pry bar and two-by-fours was true, the condition was work-related. Petitioner testified credibly about his work activities. Respondent offered no evidence to the contrary. Is that an incorrect statement of what Dr. Bracco said? Absolutely an incorrect statement. What Dr. Bracco said was that that was not the history he gave. No, no, no, we understand he said that. That's in a different section. Bracco's deposition was taken on direct examination. Petitioner testified that petitioner did not provide a history of using pry bars on December 8th and, therefore, didn't believe the condition was work-related. That's not what I asked you. What I asked you was when the commission said that Bracco testified that if it was true that the man was using pry bars, working with pry bars and true, the condition was work-related. Did he say that? No, what he said was, Judge, he said that in general working with a pry bar could cause that, but that wasn't his opinion in this case. So, in other words, we understand that. Which is a big distinction. Please, please, please. You and I have got to get on the same page here, okay? Slow down. Did he say that if the man was working with pry bars, if that was true, then his condition was work-related? That requires a yes or a no answer. No, he said. He never said that? He said. Okay. He said in general. Okay. Sir, I'm going to look in the record and find a figure. Because they said the positioner then testified credibly and the respondent offered no contrary evidence. Either he said that or he didn't. I believe I copied word for word that section of Dr. Bracco's testimony. Give me one second. You look for it. I'll look for it. I have a cite from the record of page 153, Judge, where he says from the evidence, what I have still is not related. I believe right before that is when the question was about the in general. I'll find it. What I was going to say before, though, is that in this case, part of why I believe it's requisite in this case to have petitioner come forth to meet his burden with respect to medical evidence is because there's a question as to whether or not a condition of ill-being like this is something that comes on as a result of a single occurrence, as he testified to, versus something that could have come on over a long period of time or been there for years, particularly since this gentleman had only been working for us for a temporary assignment here. And I believe that is not something a layperson could come up with all by themselves. It's quite different than somebody being visibly at the bottom of a ladder having obviously just fallen, was bleeding, or a layperson could draw a conclusion that there would be a causal relationship there. This is the type of case that lends itself to a requirement that it would have been a really good idea if he would have brought a doctor forth to tie this thing up. And having not done so, I posit the question, since it's not my burden, it's the petitioner's burden, how did he meet his burden of proof here? And then finally, this is just clearly not a penalties case. It's clearly not a penalties case. The attempt to try and take one statement of an expert to a general proposition and then elevate that to the expert admitting that that general proposition applies to the injury at bar is not only intellectually dishonest, it's clearly an attempt to do an end-run around this Court's decision in the Reynolds case. It was a hypothetical question. Right, exactly. And the facts on the hypothetical question were supported by the evidence presented by the petitioner. So what's wrong with that? Because what they did then is they took that, even if that were true, they took that and they said, okay, the employer's expert admitted that this is related, despite the fact that the gentleman had never given us that history of accident or given it to any other doctor up until he didn't give it to anybody in December, he didn't give it to anybody in January, it wasn't actually testified before the Commission, so how could we, even if that were true, how could we have known he was using a pry bar up until the date he testified and then use that general statement to our doctor as a statement by the Commission that, oh, they knew about it, their doctor admitted it was related, therefore it's a penalties case. So you're talking about penalties now, but as far as proving the case, it was a hypothetical question that was supported by the evidence? It was a hypothetical question, but did the doctor say that that's what happened in this case? No, he said in general, just like a motor vehicle accident, in general, can you hurt yourself, can somebody hurt their back in a car accident? Yes. Okay, that's like saying, therefore, if the person was in a car accident and you dispute that they hurt their back, it's a penalties case. That's what I take away from what they tried to do here. It's just intellectually dishonest not to read the entire thing. Time is up. You'll have time on rebuttal. Counsel, please. Thank you. May it please the Court, Jim Keefe on behalf of Robert Brock, Mr. Coughlin. Something that was kind of brought out here is, well, what else could a respondent have done, that being the employer, well, my client testifies that he's using the pry bars, and we get to the end of proofs, and they say we're going to leave proofs open to take Dr. Brock's deposition. We say fine. And so I believe I asked Dr. Brock specifically. I pretty much read my client's testimony right out of the transcript and said, if this is what happened, is this work related? He said yes. So they said, well, what else could we have done? How could we rebut that? What he was doing was not specifically documented in the record. Well, proofs were open. Why don't we go ask the two guys that were working with him on the date of the accident? I mean, we have an incident report from December the 18th, 2009, that at the start of the workday, he was fit for duty. By the end of that workday, it says he's no longer fit for duty. Not only that, they make him, well, he stays around for December the 19th for the workday. The boss tells him, just sit in the truck. I know you're hurt. We're scheduling you to go see Dr. Brock. So how they can claim that some injury did not occur when he's working full duty for five weeks at this job, and then all of a sudden on December the 18th, after a couple hours of work, he gets hurt, reports it, they have him sit out the rest of the day, have him sit out December the 19th, schedule him for a doctor's appointment, and then say, oh, he didn't get hurt that day at work? I mean, it's just ludicrous. What do you make of your opponent's argument that the reference to the pry bar mysteriously surfaced for the first time at the trial? I believe that when he went to the emergency room, he said he hurt his shoulder at work, and it's documented as work-related. I cannot tell you, Judge, why the emergency room physician in the type notes did not record that specific history. He testified that he told Dr. Brock that that's how he hurt himself. That's what he was doing in the morning, which I believe, to your point and the commission had pointed out, is he said he was doing his regular job duties, and so then Dr. Brock just stops there. He didn't tell you anything about his job duties, and the commission just did not find that credible. So I think it's just a point of the doctors not documenting precisely what they did. Maybe they didn't quite understand the mechanism. I mean, I remember when I first talked to Bobby, it was kind of hard to understand exactly what he was doing when this happened. But I believe that, again, that was a credibility issue. Let me ask you a question. I don't have any problem with Brock's testimony in your cross-examination supporting the causation issue. What about the penalties issue? Now, this issue of using the pry bar never came up until your client testified. Is that correct? According to responded to the history they had, we believe that my client told Dr. Brocko, but say Dr. Brocko denies it. Yes, I understood. So Brocko informs the insurance carrier that, in his opinion, there was no causal connection, so they don't pay.  I think because, Judge, once we left proofs open at the conclusion of my client's testimony, they simply had to say, let's go talk to these two witnesses, Eric Allen and Jeff Taylor, that were there. Because we welcome that because we know what they were going to testify to. They were going to testify to exactly what my client testified to. They had that opportunity. So if they want to claim, oh, well, we didn't have this history, you know what? We left proofs open. Bring your witnesses in. We would have been happy with that. They elected to not do that, so I think the commission said, well, you know, they had every opportunity to come in and rebut that my client wasn't using the pry bars, but they didn't. Well, we're still at the penalties phase, so we're talking about what took place before the hearing here. What is it that justifies a penalty award here? What did we have? I think you tried to say, well, the penalties are assessed against the employer, obviously, and that the fellow shows up for work, and at the end of work, he's hurting. There's an acknowledgment by a supervisor that he's injured the next day, and that should be sufficient for them to infer that it's a work-related injury. Is that your argument? Well, are you asking, is that the basis of the penalty award, Judge? Yeah. What's the basis for the penalty award? The basis for the penalty award is that when the doctor, Brocco, was given the facts of what actually occurred, how he got hurt, he said, yeah, that's work-related. No, no, no. What he said was, if you assume he testified truthful that he was working with these pry bars, is it work-related? And he said, yes. Yes, sir. But that's assuming that he's testifying truthfully. So why do you get penalties? Brocco said he never told him that. Because they very easily, what happened was my client testified. And so the case is not closed then. We go and take the deposition. So during that period of time, while proofs are open, why didn't they just go and ask the two guys that were working with him, was he testifying truthfully? They had that opportunity, and say no. So I think the commission inferred that, look, this is the only credible evidence,  What's in Pauletta's records? What story did he tell Pauletta? I believe he hurt his shoulder doing his job duties. I don't think Pauletta specifically documents the pry bar use. Is there any reference in the medical records prior to the testimony arbitration that he was injured using pry bars in a two-by-four? No, sir. Okay. Is there reference in the medical records that he was doing something else? Yes. Like what? Lifting and then general job duties and waiting for the crane. So why would they have to go take somebody else's deposition when they have medical records suggesting that it didn't happen the way that the plaintiff said it happened? Well, because, I mean, he testified credibly. There was no other explanation. And when we gave him the chance to say it didn't happen the way he said it happened. So are you saying penalties required if the respondent, the employer, doesn't specifically disprove the testimony of the claimant, they're going to get hit with penalties? Is that your position? No, Your Honor. I believe that we did prove it through his testimony and then the admission of Dr. Bracco, and then they had an obligation to go back and dispute what he said. Because it's not inconsistent with the medical records. So you are saying that they have to go back and dispute that and provide additional evidence to avoid penalties? Well, in a situation where somebody testifies credibly, what happened? And then the doctor admits, yeah, that's what happened. It's work-related. So, again, because I believe that is a factual question for the commission, again. It's not a legal question. And Bracco was giving the set of facts. As my client testified, which my client testified he told him, despite the fact he said he didn't, then the commission clearly disagreed with what Dr. Bracco said in that regard. At which point they had an opportunity to say, oh, no, this is not what he did, but they didn't. Because what happened was he was working with the pry bars, he noticed the pain in his shoulder, he reported it right away. Did you proceed on a chain of events theory or one specific incident that gave rise to the injury? Well, he was using the pry bars, so he wasn't saying it was necessarily I pulled one time, but it was I was doing this process in the morning. So sort of a chain of events? In a way, yes. And so also I think that fits with the chain of events going towards causation is he never had a problem with his left shoulder before. How do we know that? He was doing this job for five consecutive weeks without a problem. Can I ask a question? Yes, sir. Am I misreading Pauletta's records when he says that, again, he works as a welder, but on this particular day he was working on some rigging on a crane. He denies any obvious precipitating trauma or injury. In fact, he first noticed the shoulder pain during a break when he was smoking a cigarette. Now, is that in Pauletta's records or not? I believe that's what his note says. Coupled with Brocko's opinion that this is not work-related, how do you justify penalties? Well, I don't believe that was Dr. Brocko's opinion once he was given what exactly occurred. What was Brocko's opinion made known to the employer? The first time we honestly knew it is when we got to hearing and we sat down, Mr. Coughlin had given me a handwritten note from Dr. Brocko, which we did not get because I subpoenaed the records, which I put in as one of our exhibits, and there was no mention of it not being work-related. So that's the first time we got it, and that was objected to on here today, and I believe that's in the records, and so that's why they wouldn't take it. So the information that Dr. Brocko provided to the employer before the hearing was what? Well, that it was not work-related, but that was never relayed to our office. Well, we don't care about that. We're talking about, when you're talking about penalties, penalties are assessed against an employer because it's vexatious, etc. So you've got to focus on what the employer relies upon in making their decision not to grant compensation, and was that unreasonable? So that's why we're looking at what did they know when. And we didn't know what they knew until we actually got to the hearing because, again, they didn't provide those notes, so I think at a minimum they had an obligation to explain and tell us, which they never did. But once they knew what the events were, I don't think that their obligation then just stops to continue their investigation when they had every possible opportunity to do it with proofs being open. And I believe the penalties were awarded. I don't understand. Bill, let me put it in this context. They're saying that they didn't know he used the pry bars until he testified. One, we didn't know that until we got to the hearing. In fact, I mean, I don't even believe. You didn't even know it? What's that? You didn't even know it? I did not know that the basis for them disputing it until we got to hearing, at which point I was handing that slip from Dr. Bracco. And it really didn't set forth other than just said, he didn't believe it was work-related. And then we take my client's testimony. I don't think he was even really cross-examined on the histories that he gave. And so, subsequently, we say, well, we'll take the deposition. And I didn't know what Dr. Bracco was going to testify to. I mean, all I know he was going to say was not work-related. I didn't know why he was going to say it. So he says it. And so you say, well, Dr., didn't he tell you that he was using the pry bars? No. But he said you were doing regular activities. What were those? He didn't know. It was pointed out by the commission. So I think that's an inconsistency in his testimony. So I said, assuming this is what he was doing, would that cause or aggravate the condition? He says yes. So where does their defense come in? They no longer have one because we proved it through his testimony about what he was doing. We asked the doctor. He agreed it was related. And so at that point, why does the employer then get off the hook by not doing anything further? I mean, they have testimony from Petitioner that not that what he was doing was not documented specifically in the records, but the records document that he was doing his job activities. It's not that he denied using pry bars or anything like that. I mean, they didn't document the very specifics. So then they had every opportunity to go and just call one of those guys that was working with him and say, is this what he was doing? The arbitrator only awarded penalties at $30 per day under 19-L from the date that Dr. Bracco testified, right? That is correct, Your Honor. Penalties didn't start until the day he testified through April 26, 2010. That is correct, Your Honor. And part of that, I believe, is by the time we finished his testimony and we agreed to leave proofs open, that they did pay him his TTD from the date after the accident up until the date of hearing. So there were no penalties awarded for the time preceding the hearing? Yeah. Other than, Judge, to be honest, there was a medical bill for Dr. Plutt, I believe, and the MRI. I believe $19,000 in attorney's fees were awarded on that basis. So the 19-Ls were after Dr. Bracco's testimony. So, again, I believe that this is a penalty case because we proved our case. They had an opportunity. It's not like they just said, They had an opportunity to just come in and rebut, and they failed to do so. And, again, this is a factual question. It's not a legal question. It's the Reynolds case that, you know, could any person, well, the Reynolds refer saying, well, no reasonable person could conclude that they didn't have a justifiable defense. Well, here, an arbitrator, three commissioners, and a circuit court judge all felt that the evidence supported it. So unless you have any other questions. Just a couple points. We agreed to issue an advance as part of the agreement to continue the case because I felt it was so important to go back to the horse's mouth, to Dr. Bracco, and say, here's the new history that this gentleman gave us. Does that change your opinion? So counsel's story about the penalties would make sense, and penalties would be warranted if we went back to Dr. Bracco and he changed his mind. I walked out of Dr. Bracco's office with a transcript that he doubled down. He said, you know, and here just so it's clear what exactly I'm citing from page 153 of the record. Is your question okay? And the hypothetical question that counsel asked you, well, that might be true as I understand your testimony. It's not applicable to Mr. Bracco in terms of him relating an injury, his condition, to his appointment. Is that a fair comment? Answer, I have no evidence that he used a pry bar. Then he goes on to the next question based upon the history that Mr. Bracco gave you when he presented to you in December of 2009. Is it still your opinion that his condition of OB and it's not related to his appointment with alert construction? Answer, yes, from the evidence I have and from what he said, yes. That does not provide or deprive the employer of a basis for a deny in this case. I mean, this is clearly not penalties case. So if you were ordered to pay penalties, your argument would be because you stood on your argument waiting for the case. You were still saying no causal connection. I felt that because of the different history and because of the fact that Dr. Bracco was a treating doctor, not a Section 12 examiner, I felt as doing the trial as the attorney, I thought if I get him to stick, one of two things is going to happen. Either he's going to say you're right, I changed my opinion, it's related based on this, or I'm going to be in really good shape. So I agreed to pay continuance just to get his testimony. So there could be no question, no question, I guess, all the questions you want about his records and the history, et cetera, et cetera, et cetera. He doubled down, continued to maintain it's not work related. So not only is it not a penalties case, again, I'm back to my main, which I think is my other best argument, is that petitioner is left with no causation opinion here. How can you say he met his burden of proof? What's the causation? Did it come on gradually? Did it come on over a specific event? Did it start on the 17th? Did it start on the 18th? Are we just going to forgive the requirement that he put forth something other than a general proposition from a doctor that, in general, pulling on a pry bar can cause an injury? I think we all knew that before we came here today. Did it happen in this case? Where's the evidence of the doctor saying that's what happened in this case? We don't have it in this record. And speculating on what other people could have called. It wasn't based on a doctor saying it in this case. It was based on the petitioner saying it. And they found the petitioner credible. Your argument is circular. You've got a great argument on penalties. You have no argument on causation. Well, I think because of the fact that. Can you kind of telegraph where I'm going? You need to be more direct on that issue. Can I ask one more question? You said you paid in advance in return for a continuance. Was that a matter of record? I believe so, Your Honor. I think we did. Yeah, that's something that's routinely done. As a practical matter, it keeps everybody happy on both sides. It allowed additional proof to be developed. Thank you, Your Honor. The court will take the matter under advisement for disposition.